UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DAVID SAPPER,

    Defendant

Case No.:2:12-cr-00435-JAD-CWH

**Order Denying Motion to Dismiss Indictment (#13) and Adopting Report and Recommendation (#22)**

## I.
## Introduction

    Pending before the Court is Defendant's Motion to Dismiss Indictment based upon a claim of Outrageous Government Conduct. Doc. 13. On April 15, 2013, United States Magistrate Judge C. W. Hoffman, Jr. filed a Report and Recommendation, which recommends the denial of the Motion to Dismiss. Doc. 22. Defendant David Sapper timely objected, and the Government responded. Docs. 23, 24. After a comprehensive, de novo review pursuant to 28 U.S.C. § 626(b)(1) and Local Rule 3-2 and full consideration of the Defendant's objection and the Government's response, this Court adopts the Magistrate Judge's recommendation and denies the motion to dismiss based on the reasons set forth in the recommendation and the additional reasons below.

## II.

## Procedural History of this Motion to Dismiss

Defendant Sapper was arrested after circling a Subway restaurant in Henderson, Nevada, where he had arranged to pick up an individual he believed was a 14-year-old girl with whom he had planned to engage in sexual activities. Doc. 13 at 14 & 34-43. The girl was actually a Henderson Police Department Detective who had been posing as a 14-year-old girl responding to a "casual encounters" personal ad that Sapper posted on Craigslist, along with an explicit photograph. Doc. 13 at 12. Sapper was indicted for one count of Coercion and Enticement, in violation of 18 U.S.C. § 2422(b), and one count of Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). Doc. 1.

On February 15, 2013, Defendant filed a Motion to Dismiss Indictment Based Upon Outrageous Government Conduct ("Motion"). Doc. 13. Defendant argued that *United States v. Bonanno,* 852 F.2d 434 (9th Cir. 1988), established a five-part test for acceptable government conduct, which the government cannot meet. *Id*. at 1. On April 15, 2013, the Magistrate Judge issued his Findings and Recommendation, Doc. 22, disagreeing with the Defendant's interpretation and application of *Bonanno* and concluding that, based upon the totality of circumstances in this case, Defendant failed to present evidence sufficient to prove that the government's conduct rose to a level of outrageousness that would support a finding that Defendant's rights had been violated under the Fifth Amendment's Due Process Clause. *Id*. at 9.

On May 1, 2013, Defendant filed an Objection to Magistrates' Findings and Recommendation. Doc. 23. Defendant offers three challenges to the Recommendation. First, Defendant argues that the court misapplied Ninth Circuit case law when concluding that *Bonanno* should be applied as an all-factors analysis rather than a conjunctive-elements test. *Id*. at 3. Second, Defendant argues that the Magistrate Judge erred in

concluding that, based on the totality of circumstances, the government's actions were permissible because law enforcement should be required to have some indicia of illegality before targeting a suspect for investigation. *Id*. at 4.  Third, Defendant argues that the Magistrate erred in declining to address whether the ancillary felon-in-possession charge should be dismissed because he improperly concluded that Defendant failed to challenge the validity of the search warrant. *Id*.; *see also* Doc. 22 at 6 n.2.  The court considers and overrules each of Defendant's objections in turn.

## III.

## Discussion

**A.    *Bonanno* Is Not a Mandatory Checklist for Legitimate Government Activity.**

The crux of Defendant's objection is the significance of the passage in the Ninth Circuit's decision in *United States v. Bonanno* that states:

> Unacceptable governmental conduct occurs when the government agents act brutally by using physical or psychological coercion against the defendant, or the agents engineer and direct the criminal enterprise from start to finish.  The government's conduct is permissible when: (1) the defendant was already involved in a continuing series of similar crimes, or the charged criminal enterprise was already in progress at the time the government agent became involved; (2) the agent's participation was not necessary to enable the defendant to continue the criminal activity; (3) the agent used  artifice and stratagem to ferret out criminal activity; (4) the agent infiltrated a criminal organization; and (5) the agent approached persons already contemplating or engaged in criminal activity.

852 F.2d 434, 437-38 (1988).  Defendant contends that "[t]hese factors are listed in the conjunctive; each factor must be met, or the government's conduct must be considered unacceptable." Doc. 23 at 3.  Thus, Defendant argues, "[t]he Magistrate Judge misapplied Ninth Circuit case law when it held that the elements of legitimate government activity are factors rather than elements." *Id*.

The Court disagrees with Defendant's interpretation of this passage in *Bonanno* as a five-part test for "legitimate government activity," each part of which must be "met" for the government's conduct not to be considered outrageous and the indictment to stand.

The Court agrees with the Magistrate Judge that the *Bonanno* factors "only help guide" the court's "totality of the circumstances analysis" for the reasons set forth in the Findings and Recommendation. See Doc. 22 at 6-7. And the Court additionally concludes that the origin of *Bonanno*'s five-part list, its structure and content, and its application by the Ninth Circuit and other district courts within the circuit further demonstrate that the five factors in *Bonanno* are, at most, a list of law-enforcement methods that the courts have found independently acceptable and that serve as non-exclusive guidelines for analyzing whether the police conduct "is so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Mayer*, 503 F.3d 740, 754 (9th Cir. 2007) (internal quotation and citation omitted).

### 1. The Source of *Bonanno*'s Five-factor List Demonstrates That it Is Not Intended as a Reverse Checklist for Validating Government Conduct.

The Ninth Circuit's decision in *United States v. Bogart*, 783 F.2d 1428, 1438 1986)—the source of the *Bonanno* list—demonstrates that this enumerated list is merely a collection of various law-enforcement methods that courts have validated as not outrageous. In *Bogart*, the Ninth Circuit articulated the detailed history of the outrageous conduct defense along with "[a] summary of the present case law in this difficult area" to "assist the district court on remand in resolving the merits of Bogart's" claim. *Bogart*, 783 F.2d at 1431-38. The *Bogart* court reiterated that "governmental conduct would be constitutionally impermissible only where it went beyond 'that fundamental fairness, shocking to the universal sense of justice,'" "the precise parameters" of which it admitted are "probably indefinable." *Id.* at 1434-35 (quoting *United States v. Russell*, 411 U.S. 423, 432 (1973)). It noted, but rejected, the approach of some courts that had limited the defense to the "highly discrete group of extreme cases of police brutality," adopting instead a "broader definition of unconstitutional outrageous conduct" that also includes "those hopefully few cases where the crime is fabricated *entirely* by the police to secure

the defendant's conviction rather than to protect the public from the defendant's continuing criminal behavior." *Id*. at 1436 & 1438.

The *Bogart* Court then stressed that "[d]rawing a bright line with any degree of assurance is fraught with problems" and "probably cannot be usefully defined in the abstract. Ultimately, every case must be resolved on its own particular facts." *Id*. at 1438. However, the Court offered "some general observations" and "general principle[s]" from the cases refusing to apply the outrageous conduct defense, and noted that various government methods that have been found constitutionally acceptable include infiltrating a criminal enterprise already in progress, using "artifice and stratagem to ferret out criminal activity," and "approach[ing] people already engaged in or contemplating criminal activity." *Id*. at 1437-38 (quoting *Sorrells v. United States*, 287 U.S. 435, 441 (1932)).

It is from these "general observations" and "general principles" that the *Bonanno* five-item list is derived. *See Bonanno*, 852 F.2d at 437-38 (citing *Bogart*, 783 F.2d at 1437-38). Nothing in *Bonanno* suggests that all five of these general observations or principles must be present for the government's conduct to be deemed permissible. Even the *Bonanno* court did not apply this list as a test; it rejected Bonanno's outrageous government conduct defense after finding just one of these principles – "[t]he defendants . . . were already involved in the purchase order scheme when [the informant] approached them." *Id*. at 438. And the *Bonanno* court also did not refer to these list items as "factors," which contrasts with its description of the "five factors to consider when determining whether a defendant was entrapped," just five paragraphs later. *Id*. at 438. When the *Bonanno* court itself did not treat these five considerations as elements of a conjunctive test for legitimate government conduct, this Court is not persuaded to do so. Post-*Williams* decisions from the Ninth Circuit further evince that the touchstone for outrageousness remains whether the conduct is "so grossly shocking and so outrageous as

to violate the universal sense of justice," not a rigid five-part test. *United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011), *cert. denied,* 132 S. Ct. 1768 and 132 S. Ct. 1773 (2012) (quoting *United States v. Restrepo,* 930 F.2d 705, 712 (9th Cir.1991)).

### *2.    Defendant's Interpretation of Bonanno Impermissibly Shifts the High Burden of Proof to the Government.*

To read *Bonanno* as providing a five-part test that the government must satisfy would also improperly shift the burden to the government to demonstrate "legitimate government activity." Doc. 23 at 3. **Defendants** bear the burden of proving that the government's conduct was "'so excessive, flagrant, scandalous, intolerable, and offensive as to violate due process.'" *United States v. Edmonds*, 103 F.3d 822, 825 (9th Cir. 1996) (quoting *United States v. Garza-Juarez*, 992 F.2d 896, 904 (9th Cir.1993)); *see also United States v. McDavid*, 396 F. App'x 365, 371 (9th Cir. 2010) (quoting *Edmonds*, 103 F.3d at 825 & 826, and noting that the burden is on the defendant to meet the "extremely high standard" of proving "that the government's conduct was 'so excessive, flagrant, scandalous, intolerable, and offensive as to violate due process.'"). It is unlikely that the Ninth Circuit panel intended to shift that burden with its summary statement in *Williams* that *Bonanno* "set forth five factors that, when satisfied, indicate that the governmental conduct was acceptable." *Williams*, 547 F.3d 1187, 1199 (9th Cir. 2008).

### *3.    Other District Courts in this Circuit Agree that <u>Bonanno</u> Did Not Supplant the Totality-of-the-Circumstances Analysis for Outrageous Governmental Conduct.*

Finally, the Court is also persuaded by the reasoning of other district courts within this circuit that have considered and rejected the *Bonanno* argument that Defendant advances here. As the Magistrate Judge noted, in *United States v. Simpson*, 2010 WL 16611483 (D. Ariz. Apr. 20, 2010), the Court concluded that "outrageous government conduct is to be analyzed by considering the totality of the circumstances in each case," and the *Bonanno* "factors are guidelines that provide a means to analyze the government's

behavior." *Simpson* at *8. They "appear to function more like a balancing test than a *sine qua non* checklist of absolute requirements for government behavior to be acceptable," as "*Williams* does not say if, *and only if*, the five *Bonanno* factors are met, the government conduct is acceptable." *Id*.

Other courts have adopted the *Simpson* court's reasoning. In *United States v. Wilson*, 2012 WL 460342 (S.D. Cal. Feb. 10, 2012), the court denied a motion to dismiss in which the Defendant argued that the government's failure to satisfy the *Bonanno* factors rendered the government's sting operation outrageous. The Court relied on *Simpson* and the instruction in *Bogart* that "every case must be resolved on its own particular facts," 783 F.2d at 1438, and held that this "ordinary sting operation" in which the government supplied defendants counterfeit credit cards and initially raised the idea of a counterfeit credit card scheme "was not so egregious as to shock 'the universal sense of justice.'" *Wilson*, 2012 WL 460342 at *3-4 (quoting *United States v. Citro*, 842 F.2d 1149, 1153 (9th Cir. 1988)). And, as the Magistrate Judge noted, the district court similarly followed *Simpson* when denying a motion to dismiss in *United States v. Velasquez-Lopez*. "The *Bonanno* court lists five examples of situations in which the 'government's conduct is permissible.' The Defendants seek to argue the reverse of these examples, contending that, if none of these five situations occurred, then, as a matter of law, the government conduct has been outrageous. This Court does not so read *Bonanno* as such a 'reverse-checklist.'" 2010 WL 1996605, *2 (D. Ariz., May 19, 2010) (internal citations omitted). *See also United States v. Cota-Ruiz*, 2012 WL 5439057, *4 (D. Ariz. Oct. 12, 2012) ("Defendant . . . overstates the significance of the five factor test discussed in" *Williams*; "it is not mandatory that the government satisfy all five of these factors for the court to find the government's conduct was not outrageous.")

In sum, the Court finds insufficient support for Defendant's objection that the Ninth Circuit requires the *Bonanno* five factors to be met "or the government's conduct

must be considered unacceptable." Doc. 23 at 3. If there is a "test" for outrageous government conduct, it is whether the totality of the circumstances, juxtaposed against the rich history of cases in which outrageous government conduct claims have been considered, reveals that "the government's conduct violates fundamental fairness and is 'shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment.'" *Gurolla*, 333 F.3d at 950 (quoting *Russell*, 411 U.S. at 431-32).

**B. Defendant Has Not Satisfied His High Burden of Demonstrating that the Government's Conduct Was So Grossly Shocking and so Outrageous as to Violate the Universal Sense of Justice.**

The second half of Defendant's objection to the Magistrate Judge's Findings and Recommendation is that the judge erred in determining "that, based on the totality of the circumstances, the government's actions were permissible." Doc. 23 at 3. Defendant highlights that his personal-ad posting had no outward indication that the defendant was seeking to contact a minor and contends that this lack of evidence that he was seeking minors for sexual activities made it outrageous to target him in this sting operation. *Id*. at 4. And he argues that police should be required to have "some indicia of illegality" being undertaken by the defendant before police may make him a target of investigation. *Id*.

### *1. The Law Does Not Require an Indicia of Illegality before Targeting a Suspect.*

The notion that the government needs an articulated reason to target a particular participant in an investigation has been rejected by the Ninth Circuit. In *United States v. Luttrell*, 889 F.2d 806, 812 (9th Cir. 1989) ("*Luttrell I*"), *rev'd en banc*, 923 F.2d 764 (9th Cir. 1991) ("*Luttrell II*"), a Ninth Circuit panel considered, *inter alia*, whether investigators engaged in outrageous governmental conduct when they launched a sting operation without having any basis for believing that the targets of the investigation were engaged in any wrong doing. The defendant had lost a significant sum of money when circumstances beyond his control rendered useless credit card drafts he had received on

account of legitimate services he had provided. *Id*. at 808. The government subsequently hired an informant, who himself was awaiting sentencing for a credit card violation and was defendant's former acquaintance. *Id*. After setting up a fictitious credit card factoring business, the government had the informant contact the defendant to negotiate a deal whereby the informant would fraudulently factor the defendant's credit card drafts through a series of transactions. *Id*. After the defendant provided the informant with the credit card drafts, the government charged the defendant with, among other things, attempt to traffic in counterfeit drafts. *Id*. at 809.

The court did not find outrageous conduct. However, it did state that law enforcement "violate[s] constitutional norms when, without reasoned grounds, they approach apparently innocent individuals and provide them with a specific opportunity to engage in criminal conduct." *Id*. The court reasoned, "[w]e see substantial mischief in *any pattern* of law enforcement that arbitrarily targets for intrusion the lives of individuals who, to all reasonable appearances, are minding their own business." *Id*. (emphasis added).

But on en banc rehearing, the court partially vacated the three-member-panel decision, reasoning, "we follow our sister circuits in explicitly rejecting a 'reasoned grounds' requirement for investigation of an individual under the due process clause." *Luttrell II*, 923 F.2d at 764 (citing *United States v. Jenrette*, 744 F.2d 817, 824 (D.C. Cir. 1984) (no constitutional violation where FBI targeted defendant without "reasonable suspicion" of wrongdoing); *United States v. Gamble*, 737 F.2d 853, 860 (10th Cir.1984) ("government need not have reasonable suspicion of wrongdoing in order to conduct an undercover investigation"); *United States v. Jannotti*, 673 F.2d 578, 608–09 (3d Cir. 1982) (*en banc*) (rejecting "reasonable basis" test); *United States v. Myers*, 635 F.2d 932, 941 (2d Cir. 1980) (rejecting "reasonable suspicion" requirement)).

Two years later in *United States v. Garza-Juarez*, the Ninth Circuit applied *Luttrell*

*II* in rejecting the defendant's claim that the government acted outrageously by "targeting him for an investigation without any reason to suspect he was engaged in illegal conduct." 992 F.2d 896, 904 (1993). "To the extent that this argument relies on the government's lack of a reasoned ground for investigating [defendant], it must fail under the teachings of our en banc opinion in *Luttrell*." *Id*. "Therefore, any inability to state reasons for investigating [defendant] does not represent a constitutional violation." *Id.* Thus, the Ninth Circuit very clearly recognizes that the government need not have any reasoned grounds or indicia of illegality for initiating an investigation or targeting a specific person with its undercover operation.

Also persuasive is the Third Circuit Court of Appeals' decision in *United States v. Driscoll*, 852 F.2d 84 (1988), affirming the district court's denial of a motion to dismiss a charge of receiving child pornography through the mails. Driscoll complained "that he was targeted as a suspect . . . when the agents did not have information establishing that he had previously received child pornography through the mails. He seem[ed] to be arguing that there was no reasonable basis for the Postal Service agents to have targeted him." *Driscoll*, 852 F.2d at 86-87. The Court did not find this lack of grounds for suspicion evidence of outrageous conduct, reasoning, "where the conduct of the investigation itself does not offend due process, the mere fact that the investigation may have been commenced without probable cause does not bar the conviction of those who rise to its bait." *Id.* at 87 (quoting *Jannotti*, 673 F.2d at 609).

### 2. The Totality of the Circumstances Lack the Conscience-shocking Facts Necessary to Establish an Outrageous Government Conduct Claim.

Defendant Sapper may not have initiated the contact with the undercover agent he believed to be a 14-year-old girl, but he quickly rose to the bait and was thereafter the party responsible for all aspects of the crime. It was Defendant who asked "How young?" and was undeterred by the response (and later reminders) that she was 14 years old, Doc.

13 at 35, 37; asked for photos, *id*. at 35; turned the conversation sexual in nature, *id*. at 36; indicated he would "love to set something up" with the responder, *id*.; significantly escalated the sexual nature of the conversation by proposing various, specific sexual acts he wanted them to perform on each other, *id*. at 37-42; encouraged her to sneak out of the house and meet him so they could engage in such acts, *id*. at 39-42; suggested what she should wear for the rendez-vous, *id*. at 42; and drove the pre-described car to pick her up at the agreed-upon location and time. *Id*.

In sum, the government provided Sapper only with the opportunity to commit the crime, and this is not a scenario in which the government "engineer[ed] and direct[ed] the criminal enterprise from start to finish," because there would have been no criminal enterprise without Defendant's acts. *Bogart*, 783 F.2d at 1436 (quoting *United States v. Ramirez*, 710 F.2d 535, 539 (9th Cir. 1983)); *see also United States v. Cruz*, 2013 WL 3833033 (E.D. Cal. Jul. 23, 2013) (denying motion to dismiss indictment for enticement of a minor where defendant's initial Craigslist posting specifically requested "over 18" contact, defendant continued to pursue sexual relationship with undercover responder he believed to be a 13-year-old girl, and defendant arranged to meet her at a fast-food restaurant, where he was ultimately arrested); *cf. State v. Cunningham*, 808 N.E.2d 488, 492 (Ohio Ct. App. 2004) (finding that undercover officer's act of posing as a 14-year-old girl in an internet chat room was not outrageous, reasoning that the officer "merely gave the Defendant the opportunity to solicit sex from a person who the Defendant believed was a fourteen-year-old minor on the Internet. The situation is analogous to the traditional solicitation case where a 'john' solicits sex from an undercover officer posing as a prostitute on a street corner. . . . Use of decoy prostitutes as a means to snare 'johns' has never been considered so egregious by any court to support this due process defense."). This Court agrees with the Magistrate Judge that the government conduct here simply does not approach the level of conscious-shocking behavior "so outrageous

that due process principles would absolutely bar the government from invoking the judicial processes to obtain a conviction." *Bogart*, 783 F.2d at 1432 (quoting *Russell*, 411 U.S. at 431-32); Doc. 22 at 9.

**C. The Evidence Giving Rise to the Ancillary Charge of Possession of a Firearm by a Convicted Felon Is Not Subject to the Exclusionary Rule.**

Under the exclusionary rule, evidence obtained in violation of the Fifth Amendment to the United States Constitution may not be introduced at trial to prove a defendant's guilt. *See Bram v. United States*, 168 U.S. 532, 548 (1897) (evidence obtained through Fifth Amendment violations is excluded in federal court). As the Court has concluded that the law enforcement activity at issue in this case did not constitute outrageous governmental conduct within the meaning of the due process clause under the Fifth Amendment, the exclusionary rule is not triggered. Therefore, the Court overrules Defendant's objections to the extent they relate to fruit of the poisonous tree under the exclusionary rule.[1]

**IV.**

**Conclusion**

Based on the foregoing and for good cause appearing therefore, **IT IS ORDERED** that Magistrate Hoffman's Findings and Recommendation (Doc. 22) are hereby ADOPTED in their entirety;

**IT IS FURTHER ORDERED** that Defendant David Sapper's Objections to Magistrate's Findings and Recommendation, (Doc. 23) are **OVERRULED**;

. . .

. . .

---

[1] This finding is without prejudice to Defendant bringing a challenge to the validity of the warrant on any other grounds not flowing from his outrageous governmental conduct claim.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Indictment (Doc. 13) is **DENIED**.

Dated this 10th day of September, 2013.

_____
Jennifer A. Dorsey
United States District Court Judge